# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CASEY BERTRAM, on behalf of himself and others similarly situated, | CIVIL ACTION FILE NO. 2:23-cv-2215-CSB-EIL |
| Plaintiff, | |
| v. | |
| SUNRUN, INC. | |
| Defendant. | |

_____/

**OPPOSITION TO DEFENDANT SUNRUN, INC.'S
<u>MOTION TO STRIKE CLASS ALLEGATIONS</u>**

## INTRODUCTION

Defendant Sunrun, Inc. ("Defendant" or "Sunrun") asserts the Court should grant its Motion to Strike Class Allegations based on two incorrect factual allegations: 1) that plaintiff Casey Bertram ("Plaintiff" or "Mr. Bertram") had something to do with the creation of a lead that Sunrun purchased from Sunvalue.com, a third-party lead generation website (he did not) and 2) that Mr. Bertram's personal, residential cell phone is in fact a business line (it is not). Because both of the factual predicates of Sunrun's motion are incorrect, their motion should be denied.

Sunrun's motion, moreover, is also incorrect as matter of law. First, Mr. Bertram is not required to plead the lack of prior express consent, which has been universally recognized as an affirmative defense under the TCPA, including by the Seventh Circuit. Despite that, Mr. Bertram does attest that the calls were without consent, unwelcomed, and did not come as a result of his invitation or request to be contacted, and indeed has submitted a declaration affirming those facts. Mr. Bertram, moreover, has attested under penalty of perjury that the cell phone number on which he received the calls promoting Sunrun is not a business phone number and never has been.

Second, Plaintiff's class allegations should not be stricken as there is no basis to conclude at this stage that they are not certifiable and the discovery period that is ongoing in this matter, where other individuals who were similarly impacted by Sunrun's actions through calls to their numbers on the National Do Not Call Registry, should continue. The appropriate time to evaluate Plaintiff's class is at class certification based on a complete evidentiary record.

## PLAINTIFF'S ALLEGATIONS AND BACKGROUND

Mr. Bertram has alleged a violation of the TCPA's restrictions against calling people on the National Do Not Call Registry. "The law opted for a consumer-driven process that would allow

objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2)…the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…Private suits can seek either monetary or injunctive relief." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019). As the Seventh Circuit has observed, "[c]lass certification is normal [in TCPA cases] . . . because the main questions . . . are common to all recipients." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.,* 821 F.3d 992, 998 (8th Cir. 2016), *quoting Ira Holtzman, C.P.A. & Assoc., Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

Here, Mr. Bertram alleges that his personal, residential telephone number, (815)-671-XXXX has been on the National Do Not Call Registry since November of 2005. *See* ECF No. 1 at ¶¶ 19-20. Mr. Bertram alleged that in spite of this listing he received calls from Sunrun promoting its solar services and products. Indeed, Sunrun's response to Plaintiff's Request for Production of Documents reveals that Sunrun actually made 55 telemarketing calls in total to Mr. Bertram's cell phone. See Declaration of Anthony Paronich at ¶ 2, attached hereto as <u>Exhibit 1</u>. Because of the *en masse* nature of telemarketing and the violations of the TCPA, Mr. Bertram seeks to represent a Class of persons tentatively defined as:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

Contrary to the allegations and insinuations underpinning Sunrun's Motion that the online inquiry it claims to have purchased from a third-party lead generation company is somehow connected to

Mr. Bertram (described as a "highly curious circumstance" (ECF 14 at 1)), Mr. Bertram attests in his declaration he had nothing to do with the purported consent cited by Sunrun. Mr. Bertram attests that he did not visit the Sunvalue.com website to complete a webform regarding solar services, nor has he ever done so. Declaration of Casey Bertman at ¶ 2, attached hereto as <u>Exhibit 2</u>. Mr. Bertram further attests that he does not know Kim McKenna, the person Sunrun claims provided consent on his behalf to receive phone calls promoting Sunrun's goods and services, nor did he ask her to visit the sunvalue.com website on his behalf. *Id.* at ¶4. Mr. Bertram further attests that he told Sunrun that Ms. McKenna had died because he was so frustrated with the calling and wanted it to stop. *Id.* at ¶ 5.

In its motion, Sunrun asserts that Mr. Bertram's number is associated with a business known as Bertman Trucking, Inc. on the www.quicktransportsolutions.com website. Again, Mr. Bertram's declaration establishes that his personal residential telephone number, which he had had since he was 18 years old (he is now 47) is not a business line which would not be entitled to Do Not Call protection under the TCPA. *Id.* ¶¶ 6, 7. Mr. Bertram attests that Bertman Trucking, Inc. was a business that he owned from 2006 to 2010, when it was dissolved. *Id.* ¶ 9. Mr. Bertram further attests that his personal, residential cell phone was not a Bertman Trucking, Inc. business telephone number, nor was it ever advertised as associated with Bertman Trucking. *Id.* ¶ 10. Mr. Bertram attests that he did not receive calls from trucking customers on his personal cell or otherwise as booking for the trucks owned by Bertman Trucking, Inc. *Id.* ¶¶ 10-11. Finally, Mr. Bertram attests that he did not provide his personal, residential cell phone to the website www.quicktransportsolutions.com cited by Sunrun in its motion and supporting declaration. *Id.* ¶ 12.

Although Sunrun asserts in its motion "endeavors to call only existing customers or customer

prospects who request to be called and provide prior express permission to be reached on a phone number that they provide" (ECF 14 at 1) this lawsuit is not Sunrun, Inc.'s first time standing accused of violating the TCPA on a wide-scale basis. In 2019, Sunrun was sued for violating the Do Not Call prohibitions of the TCPA in the Northern District of California, an action which ultimately resulted in a class action settlement for $5,500,000, approved on May 11, 2021. *See Loftus, et al. c. Sunrun, Inc. et al*, Northern District of California, Civil Action No. 3:19-cv-01608-RS, ECF 118. Finally, another class action relating to Sunrun, Inc.'s telemarketing is currently pending in the Northern District of California, as to which Sunrun has filed a similar motion to dismiss claiming it has obtained consent of the called party—a claim that the plaintiff specifically denied in her Complaint. *Strickland v. Sunrun, Inc.* Northern District of California, Civil Action 5:23-cv-05034, ECF 1, and 20. And those are far from the only times Sunrun has been accused of violating the TCPA.[1] Rather than representing a highly "curious circumstance" Sunrun's telemarketing suggests a problematic pattern of violating the TCPA that requires exploration in discovery.

---

[1] Notice Removal, *Saunders v. Sunrun, Inc.*, Case No. 1:19-cv-3127 (N.D. Ill. May 9, 2019), ECF No. 1; Compl., *Ewing v. Encore Solar, LLC*, Case No. 3:18-cv-02247-CAB-MDD (S.D. Cal. Sept. 27, 2018), ECF No. 1; Notice Removal, *Va v. Sunrun Inc.*, Case No. 1:18-cv-00856-JHR-KBM (D.N.M. Sept. 12, 2018), ECF No. 1; Notice Removal, *Barker v. Sunrun Inc.*, Case No. 1:18-cv-00855-KK-LF (D.N.M. Sept. 12, 2018), ECF No. 1; Compl., *Taylor v. Sunrun Inc.*, Case No. 5:18-cv-01207-JGB-SHK (C.D. Cal. June 5, 2018), ECF No. 1; Compl., *Knapp v. Sunrun, Inc.*, Case No. 2:18-cv-00509-MCE-AC (E.D. Cal. Mar. 8. 2018), ECF No. 1; Compl., *Bozarth v. Sunrun, Inc.*, Case No. 3:16-cv-3550-EMC (N.D. Cal. June 24, 2016), ECF No. 1; Compl., *Slovin v. Sunrun, Inc.*, Case No. 4:15-cv-05340-YGR (N.D. Cal. Nov. 20, 2015), ECF No. 1.

**ARGUMENT**

1. **Sunrun's Incorrect Assertions that Mr. Bertram Had Something to Do with the Purported Consent and that his Cell Phone is a Business Line Do Not Provide a Basis to Strike Plaintiff's Class Allegations**

Courts generally address class certification at the pleading stage "only when the class allegations are facially and inherently deficient." *Sullivan v. All Web Leads, Inc.,* No. 17 C 1307, 2017 U.S. Dist. LEXIS 84232, at *23 (N.D. Ill. June 1, 2017). This is also true in TCPA cases around the country. *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-95 & n.30 (3d Cir. 2011) (holding that a court may deny class certification before discovery only if the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," and explaining that "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented"); *Medina v. Enhanced Recovery Co.*, No. 15-14342, 2017 U.S. Dist. LEXIS 186651 (S.D. Fla. Nov. 9, 2017) ("Defendant's belief that Plaintiff's claims ultimately will fail due to the need for individualized inquiry does not, at this stage of proceedings, prohibit discovery on these issues."). Consequently, allowing such a motion is uncommon and courts "should typically await the development of a factual record." *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 318 (D. Mass. 2020) (Denying similar motion in TCPA class action and collecting cases).

Federal courts in Illinois view motions to strike class allegations with disfavor. Judge Tharp recently held:

> But "it is the rare case in which it is clear from the pleadings that the plaintiffs may not proceed as a class." *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263 (W.D. Wis. 2013); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) ("Most often it will not be 'practicable' for the court to [decide the issue of

class certification] at the pleading stage . . .). "[W]here the dispute is factual and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature." *Murdock-Alexander*, 2016 U.S. Dist. LEXIS 160616, 2016 WL 6833961 at *4 (cleaned up).

*Moore v. Nicole Hupp & Assocs., LLC*, No. 23-cv-4334, 2023 U.S. Dist. LEXIS 195293, at *9 (N.D. Ill. Oct. 31, 2023). Indeed, most courts to consider the issue have held that arguments related to consent, the defendant's burden, cannot be utilized to strike class allegations. *See Wood v. Capital Vision Servs., LLC*, No. 20 C 4584, 2021 U.S. Dist. LEXIS 219013, at *3 (N.D. Ill. Nov. 12, 2021) ("If issues concerning class certification are factual, requiring discovery to determine whether certification is appropriate, a motion to strike class allegations at the pleading stage is premature.")

Sunrun asserts that it is possible that it may be able to prove that some individuals consented to the calls prior to the calls being made. Fortunately, for consumers bombarded with illegal telemarketing calls, it is not enough for a telemarketer to allege consent- it must prove it. *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017). As a result of this burden, merely mentioning that discovery will reveal that you have an affirmative defense to some class member claims is insufficient to strike class allegations, as appellate courts have ruled in the TCPA cases. *See Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (holding that "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)" and that "allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases wide latitude to inject frivolous issues to bolster or undermine a finding of predominance").

Plaintiff's class is not overbroad merely because of purported defenses of consent or of an

established business relationship ("EBR") exception to the TCPA. Even at the class certification stage, evidence of a defense as to some prospective class members does not render a class overbroad if the plaintiff demonstrates a means of ultimately excluding consumers that are subject to the defense from the class. *See True Health Chiropractic v. McKesson Corp.*, 896 F.3d 923, 932-33 (9th Cir. 2018) (predominance satisfied in TCPA case where "the record shows . . . little or no variation" in the forms used to obtain consent). Moreover, discovery can be used to identify which telephone numbers that were called had provided consent and any other class member identification issues. *See, e.g., Mey v. Frontier Communications Corp.*, No. 13-cv-01191-MPS, slip op. (ECF 102) (D. Ct. 2015); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018).

Here, since discovery has just commenced, there has been no showing that the Defendant makes any calls with consent, and Sunrun's response to Plaintiff's First Set of Document Requests, while containing production about its policies for complying with the TCPA, did not provide any documents that represent prior express written consent signed by absent members of the putative class. Declaration of Anthony Paronich, ¶ 5. However, even if it does, discovery can be used to eliminate such putative class members, just as the Ninth Circuit directed in *McKesson* with respect to a TCPA case.[2] The Seventh Circuit has taken a similar approach. *See e.g. Kohen v. Pac. Inv.*

---

[2] See also *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953, 2009 WL 2581324, at *5 (N.D. Ill. Aug. 20, 2009) (TCPA defendant "cannot defeat class certification by asserting the vague possibility that some of the individuals may have perchance consented to receiving the fax.") (citations omitted); *Balbarin v. N. Star*, No. 10-1846, 2011 WL 211013, at *1 (N.D. Ill. Jan. 21, 2011) ("[T]hat a 'sampling' of putative [TCPA] class members is ongoing and may ultimately reveal individualized issues, does not preclude class certification."); *Kaye v. Amicus Mediation & Arbitration Grp., Inc.*, 300 F.R.D. 67, 81 (D. Conn. 2014) ("the mere possibility that some class members have claims subject to separate defenses is not a reason to deny certification") (citing *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008).

7

*Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (mere possibility of consent does not preclude class certification).

At most, Sunrun's various arguments may be addressed after the benefit of discovery at the class certification and summary judgment stages. Common questions of law and fact predominate in this action, and the class are not facially uncertifiable.

Sunrun's claim that it's mistaken belief that Mr. Bertram's personal cell phone is a business line certainly is not the sort of "rare" case justifying striking class allegations, particularly in light of Mr. Bertram's allegation and declaration that his cell phone is a personal, residential number not associated with a business. *Moore v. Nicole Hupp & Assocs., LLC*, 2023 U.S. Dist. LEXIS 195293, at *9 (N.D. Ill. Oct. 31, 2023). Sunrun should not be permitted to avoid discovery in this lawsuit simply because it has obtained inaccurate information from a website.

   **2. Sunrun's Purported Consent Apart from Having No Connection to Mr. Bertram, is in any Event Legally Deficient Under the TCPA**

A defendant who asserts a consent defense bears the burden to prove with clear and convincing proof that legally valid consent was obtained and in February of 2012, the Federal Communications Commission reiterated:

> Should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained.

*See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd 1830 at ¶112; 2012 FCC LEXIS 794 (Feb. 12, 2012). The Seventh Circuit has held the same. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017). The unauthenticated third-party website screenshot produced by Sunrun in discovery in this case does not meet its burden.

### A. Sunrun's Purported Consent Did Not Provide Clear and Conspicuous Notice to a Consumer, it Instead Used the Same Color Font to Attempt to Disclose *31 Pages* of Solar Entities that May Contact a Consumer.

Based on its submissions to the Court, Sunrun intends to argue that a purported internet visit to a website permitted it to place telemarketing calls to a telephone number that was also on the National Do Not Call Registry. But the website allegedly visited does not list Sunrun, rather Sunrun claims it was listed on a hyperlink listing of 31 pages of US Residential Installers. Declaration of Anthony Paronich ¶ 4.

The "opt-in" disclosure displayed in the screenshot provided by Sunrun does not provide for "prior express written consent," which the FCC defines, in part, as a signed writing "that *clearly* authorizes *the seller* to deliver or cause to be delivered to the person called advertisements or telemarketing messages[.]" 47 C.F.R. § 64.1200(f)(9) (emphasis added). That Defendants conveniently omit this statutory requirement of clarity from their brief is telling. *See Williams v. Pillpack, LLC,* 2021 U.S. Dist. LEXIS 27496 *14-15 (W.D. Wash. Feb. 12, 2021) (certifying a TCPA class action with calls made by Prospects DM, rejecting defense claim that individual issues relating to consent would predominate, and noting the TCPA disclosure relied upon did not disclose the defendant as the "seller"). Here, the "agreement" if there was one, was with Sunvalue.com, not Sunrun.

The hallmark of the enforceability of a clickwrap agreement, which this purported website visit resulted in, is the conspicuousness of its notice. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002). An offeree is "not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Id.* The link to "4 solar partners" on the website here is the textbook definition of an inconspicuous

disclosure. Apart from being in smaller font, the words "4 solar partners" does not disclose it is a clickable link because it appears in the same font and typeface as the surrounding text. Declaration of Anthony Paronich, ¶ 3 *Cf. Arnaud v. Doctor's Assocs. Inc.*, 821 F. App'x 54, 56 (2d Cir. 2020) (holding disguised and cluttered link was insufficient to give notice of clickwrap arbitration provision). *Doctor's Assocs.* is one of many cases in the TCPA and consumer protection context where courts reject hybrid clickwrap agreements, particularly when their existence is buried or otherwise obscured. The link on the page in this website is more like *Doctor's Assocs.* and less like *Johnson v. Uber Techs., Inc*, where the terms and conditions at issue appeared in a "easy-to-read font . . . in an outlined box, indicating a hyperlink." 2018 WL 4503938, at *1 (N.D. Ill. Sept. 20, 2018).

Apart from the infirmity with the link typeface, the language does not provide inquiry notice to a consumer of what they are purportedly agreeing to. Indeed, just like in *Rojas v. GoSmith, Inc*., "Defendant did nothing that drew attention to [the link] . . . [and] [n]o evidence shows any indication that Plaintiff was advised to read the entirety of the webpage." 2020 WL 831585, at *4 (N.D. Ind. Feb. 20, 2020). Like in *Rojas*, the language on the website is hardly clear and does not place a reasonable person on even inquiry notice that there are a whopping 31 pages listing what appears to be every solar installer in the United States.

Courts have uniformly rejected such hide-and-seek "gotcha" tactics as a method of obtaining consent to arbitrate or contact persons in what would otherwise be an illegal manner. *Shultz v. TTAC Publ'g, LLC*, No. 20-CV-04375-HSG, 2020 WL 6937818, at *4 (N.D. Cal. Oct. 26, 2020) ("Although the hyperlink to the Terms and Conditions is in light blue, it is not underlined, highlighted, in all caps, or otherwise set off from the page."); *Berman v. Freedom Fin.*

*Network, LLC*, No. 18-CV-01060-YGR, 2020 WL 5210912, at *3 (N.D. Cal. Sept. 1, 2020), aff'd, 30 F.4th 849 (9th Cir. 2022), and aff'd, 30 F.4th 849 (9th Cir. 2022) ("very small text"); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 466 (S.D.N.Y. 2017) (hyperlink colored in light blue insufficient to provide notice); *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019) ("Users cannot be reasonably expected to click on every word of the sentence in case one of them is actually a link.").

The content and appearance of the websites on which consent was purportedly obtained, with which Sunrun seeks to meet *its burden* of proving prior express consent are all an appropriate area for discovery, and preclude striking of Plaintiff's class allegations. As one court held in rejecting the validity of purported consent, the precise content of the webpages is central to determining whether the purported consent meet the TCPA strict requirement of clear and conspicuous disclosure:

> Here, the Court concludes that Citizens has not met its burden to establish that "a clear and conspicuous disclosure was provided and unambiguous consent was obtained." 27 FCC Rcd. 1830 ¶¶ 26, 32, 33. The terms indicating that users who submitted their information on the Super-Sweepstakes website consented to be contacted by the site's marketing partners were printed in small font at the very bottom of the page…Further, the terms were printed in smaller font than other language on the page, and appeared in blue font against a blue background, with only slight variation in color between the language and the background. Although the terms were legible to an ordinary reader, no other language on the Super-Sweepstakes site was presented so inconspicuously, and all promotional language appeared in colors that distinctly contrasted from the background…
>
> Citizens argues that the mere appearance of the challenged term—"By clicking confirm your entry I consent to be contacted by any of our Marketing Partners"—in full on the website, without requiring the user to click a hyperlink, constitutes clear and conspicuous disclosure. This statement of the legal significance of the user's submission of her entry, in plain language, favors Citizens. However, the mere presence of this disclosure on the webpage is insufficient to establish that the website "reasonably notified the user" of the terms. The totality of the page, including the size and color of the font and particularly the placement of the disclaimer at the bottom of the page, where a user who simply scrolled to the "CONFIRM YOUR ENTRY" button and clicked on it would never have seen it,

> strongly indicates an intent to distract a reasonable user from the language…
> Accordingly, Citizens has not established that it "reasonably notified the user" of
> the terms, nor that it gave "the user the opportunity to review those terms" prior to
> clicking "CONFIRM YOUR ENTRY."

*Gaker v. Citizens Disability, LLC*, No. 20-CV-11031-AK, 2023 U.S. Dist. LEXIS 19182, at *18-23 (D. Mass. Feb. 6, 2023). Just like in the aforementioned cases, the typeface of the consent language at issue here is *identical*. The language here did not inform consumers that there was a list of 31 pages of solar partners they were giving consent to. Rather, it linked to them in smaller text without requiring the user to click on the hyperlink, a tactic that has been explicitly and directly rejected by other courts and should be here.

### B. Sunrun's Purported Consent Did Not Provide *Express* Consent when it Listed *31 Pages* of Solar Entities that May Contact a Consumer.

Before a telemarketer like Sunrun can send such telemarketing calls, it must first obtain the consumer's written consent to receive such telemarketing calls ***from a specific seller***. *See Larson v. Harman Mgmt. Corp.,* No. 1:16-cv-00219-DAD-SKO, 2016 U.S. Dist. LEXIS 149267, *5-7 (E.D. Cal. Oct. 26, 2016) (quoting 47 C.F.R. § 64.1200(f)(8)); *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 at ¶33 (2012) (recognizing that consent must include clear and conspicuous disclosure that the consumer is consenting to receive future telemarketing calls ***from a specific seller***). The rationale for this rule is obvious. Without naming a specific seller, a telemarketer could rely on any website in which the called party consented to future contact from any unspecified individual in order to sidestep the National DNC registry or pre-recorded call requirements for any seller it subsequently engages with. Indeed, this is exactly what happened here – instead of listing a seller that was going to contact the website visitor, there are a whopping 31 pages listing what appears to be every solar

installer in the United States to attempt to circumvent the TCPA's prior express consent requirement.

The regulations define "seller" as "the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 1200.64(f)(9). *See* 18 F.C.C. Rcd. 14014, 14032, 14043 (2003). As a matter of law, Sunrun's "opt-in" language fails to provide the "prior express written consent" required by the TCPA because it does not clearly authorize calls made on behalf of Sunrun. Indeed, another court examining similar "opt in" language on a similar website in a case concerning calls made by a vendor held that such language does not constitute prior express written consent under the TCPA. *See Williams v. Pillpack, LLC,* 2021 U.S.Dist. LEXIS 27496 *14-15 (W.D.WA. February 12, 2021) (certifying a TCPA class action and noting the TCPA disclosure relied upon did not disclose the defendant as the "seller"). And so too here as no reasonable jury could find that listing 31 pages of solar entities was clearly and conspicuously disclosing any of them. Such inconspicuous and unclear language is insufficient as a matter of law to give Defendants the right to call the Plaintiff because it is not "a clear and conspicuous disclosure" as required by the FCC.

### C. Sunrun's Purported Consent Did Not Comply with the E-SIGN Act.

Lastly, assuming that Sunrun was clearly and conspicuously disclosed as "sellers" on the website (which, as a matter of law, it was not), the consent relied on by Sunrun is infirm for the additional reason that it does not comply with the E-SIGN Act. As described above, the FCC's regulations implementing the TCPA require a *signed* writing. 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(a)(2). A seller may elect to obtain electronic consent in lieu of a signed writing. But if it does, the written consent must comply with the requirements under the E-SIGN Act. 47

C.F.R. § 64.1200(f)(9) (defining prior express written consent and requirements for electronic signatures); *see In re Rules 2012* ¶ 34 ("[C]onsent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule, including permission obtained via an email, website form, text message, telephone keypress, or voice recording."). Consent obtained in accordance with the E-SIGN Act's requirements may be sufficient TPCA consent; consent obtained in in violation of those requirements is a legal nullity because it is unsigned. *Id.*

Here, the legal disclosures required by the Act were not included in the purported consent form Defendant identified. Indeed, no part of the form indicated the hardware or software requirements for access to and retention of electronic records, nor was any consumer given the opportunity to provide their consent to sign and receive documents electronically. 15 U.S.C. § 7001(c)(1)(C)(i), (ii). Moreover, the website did not give any consumer a "statement" informing them of the procedures for granting or withdrawing consent, or *any* of the other required consumer disclosures, including the very consent to electronic records themselves. 15 U.S.C. § 7001(c), (c)(1). As the Court held in a recent summary judgment ruling in favor of a TCPA plaintiff on consent, such a failure to obtain the required E-SIGN disclosures is fatal to compliance with the E-SIGN Act and therefore cannot constitute express written consent:

> Second, as Plaintiff notes, to be TCPA compliant, a consumer's consent to receive solicitations from a seller must comply with the E-SIGN Act. (#234-1 at 4 n.4.) This is consistent with TCPA regulations, which allow an electronic signature in connection with prior written consent if it complies with the requirements under the E-SIGN Act. 47 C.F.R. § 64.1200(f)(9) (defining prior express written consent and requirements for electronic signatures); *see In re Rules* 2012 ¶ 34 ("[C]onsent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule, including permission obtained via an email, website form, text message, telephone keypress, or voice recording."). The E-SIGN Act provides that an electronic record may be used to provide information to a consumer that is required to be made in writing per a statute or regulation where the consumer is provided with certain disclosures, including how to withdraw consent. 15 U.S.C. §

7001(c). Those disclosures were not included in the consent form defendant identified.

*Mantha v. Quotewizard.com, LLC*, No. 19-12235-LTS1, 2021 U.S. Dist. LEXIS 245059, at *24 (D. Mass. Dec. 3, 2021). Similarly, Sunrun's third party consent contains no such E-Sign disclosures, and for this independent reason is invalid. The Court here should reach the same conclusions as the *Mantha* Court that Sunrun has the burden of establishing that Sunrun bears the burden of establishing that its purported consent as to Mr. Bertram and absent class members was clear and conspicuous permission to receive calls on behalf of a specific seller that complies with the E-Sign Act. Given that Sunrun has not and cannot make this showing, Sunrun's Motion to Strike Class Allegations should be denied and class discovery should proceed—particularly given that Sunrun has provided no proof of consent whatsoever for calls to absent class members.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that Sunrun's Motion to Strike Plaintiff's Class Allegations Should be Denied.

Date: December 19, 2023

        */s/ Anthony I. Paronich*
Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

## Certificate of Service

I, Anthony Paronich, hereby certify that on December 19, 2023 I caused the foregoing document to be filed via the Court's CM/ECF system which will effect service upon all counsel of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich
